UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SERVICE EMPLOYEES PENSION
FUND OF UPSTATE NEW YORK,

        Plaintiff,

        -v-                5:22-CV-850

THE PEARL NURSING CENTER
OF ROCHESTER, LLC, and MORDY
LAHASKY, Individually,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

BLITMAN & KING LLP        DANIEL E. KORNFELD, ESQ.
Attorneys for Plaintiff
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, NY 13204

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION & ORDER

## I. INTRODUCTION

On August 16, 2022, plaintiff Service Employees Pension Fund of Upstate

New York (the "Fund") filed this civil action against defendants The Pearl

Nursing Center of Rochester, LLC (the "Corporation") and Mordy Lahasky

("Lahasky"), its primary owner and operator.

Plaintiff's five-count complaint seeks monetary and injunctive relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor–Management Relations Act of 1947 ("LMRA") based on the Corporation's alleged failure to remit certain pension plan contributions to the Fund in accordance with their collective bargaining agreements.

On September 22, 2022, after the time period in which to answer the pleading expired, plaintiff requested the entry of default against the Corporation and Lahasky (collectively "defendants").  Dkt. No. 9.  After a pair of false starts, Dkt. Nos. 12, 14, the Clerk of Court eventually certified the default on September 26, 2022, Dkt. No. 16.

On October 6, 2022, plaintiff moved under Federal Rule of Civil Procedure ("Rule") 55(b) for the entry of a default judgment against the Corporation in the amount of $95,767.95 and against Lahasky in the amount of $56,558.22.

The motion has been briefed[1] and will be considered on the basis of the submissions without oral argument.

## II.  **BACKGROUND**

The Fund is a multi-employer benefit plan administered by its trustees out of Syracuse, New York.  Compl. ¶¶ 6–7.  The Corporation, which is owned by Lahasky, operates out of Rochester, New York.  *Id*. ¶¶ 8–9.  The Fund and

---

[1]  The deadline in which to oppose the motion expired on October 27, 2022.  Dkt. No. 17.

the Corporation are parties to certain collective bargaining agreements (the

"Agreements") that, *inter alia*, require the Corporation to remit pension plan

contributions to the Fund. *Id.* ¶¶ 14–18. According to the complaint, the

Corporation violated the Agreements because it failed to pay $21,451.41 in

contributions for hours worked by the Corporation's employees between

January 1, 2020 and December 31, 2021. *Id.* ¶¶ 25–27.

## III.  LEGAL STANDARD

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step

process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647

F.3d 497, 504 (2d Cir. 2011); *see also* FED. R. CIV. P. 55(a)–(b).

"The first step is to obtain an entry of default." *Priestley*, 647 F.3d at

504. "When a party against whom affirmative relief is sought has failed to

plead or otherwise defend, a plaintiff may bring that fact to the court's

attention." *Id.* at 504–05. "In such circumstances Rule 55(a) empowers the

clerk of court to enter a default." *Id.* at 505.

"The next step requires the plaintiff to seek a judgment by default under

Rule 55(b)." *Priestley*, 647 F.3d at 505. "Rule 55(b)(1) allows the clerk to

enter a default judgment if the plaintiff's claim is for a sum certain and the

defendant has failed to appear." *Id.* "In all other cases Rule 55(b)(2)

governs." *Id.* "It requires a party seeking a judgment by default to apply to

the court for the entry of a default judgment." *Id.*

## IV. <u>DISCUSSION</u>

Plaintiffs' motion for default judgment seeks an award of $95,897.44 against the Corporation and $56,558.22 against Lahasky. Pl.'s Mem., Dkt. No. 17-1 at 12.[2] As plaintiffs explain, they have received from the Clerk of Court a certification that both defendants are in default, Dkt. No. 16, and despite having served these non-appearing defendants with copies of their request for default judgment, Dkt. No. 11, neither the Corporation nor Lahasky has entered an appearance or otherwise defended this action.

Where, as here, a defendant has failed to appear in the action or oppose a default judgment, they are deemed to have admitted the well-pleaded factual allegations in the complaint. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). Importantly, however, "[e]ven where a defendant has admitted all well-pleaded facts in the complaint by virtue of default, a District Court 'need not agree that the alleged facts constitute a valid cause of action,' and may decline to enter a default judgment on that ground." *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., Ltd.*, 505 F. Supp. 3d 137, 149 (N.D.N.Y. 2020) (Sannes, J.) (quoting *Mickalis Pawn Shop, LLC*, 645 F.3d at 137); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84

---

[2] Pagination corresponds to CM/ECF.

(2d Cir. 2009) (suggesting district court is still required to determine whether the well-pleaded allegations establish liability as a matter of law).

Upon review, plaintiff's motion for default judgment must be granted.  The Corporation's default amounts to an admission that the Corporation is bound by the Agreements, which obligated it to remit pension plan contributions to the Fund.  Compl. ¶¶ 14–15.  Because the Corporation failed to do so, it is liable for the unpaid contributions as well as interest, liquidated damages, attorney's fees, and costs.  *Id.* ¶¶ 25–27.

Those admissions amount to a valid claim for relief under ERISA, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.

Where, as here, the employer has failed to make contributions, the court "shall award" the plan with: (A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of (i) the accrued interest or (ii) liquidated damages; (D) reasonable attorney's fees and costs; and (E) any other legal or equitable relief deemed appropriate." § 1132(g)(2).

The same is true as a result of Lahasky's default in this action.  Generally speaking, an individual "is not liable for corporate ERISA obligations solely

by virtue of his role as officer, shareholder, or manager." *Sasso v. Cervoni*, 985 F.2d 49, 51 (2d Cir. 1993).  There are exceptions, though.  For instance, under "Section 409 of ERISA, 29 U.S.C. § 1109, provides an independent basis" for liability if the defendant is a "fiduciary."  *Bricklayers & Allied Craftworkers Local 2, Albany N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015).

   "Congress intended ERISA's definition of fiduciary to be broadly construed." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).  The definition is "functional," and focuses on such things as whether the individual defendant "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A)(i), (iii).

   As relevant here, the admitted facts establish that Lahasky acted as a fiduciary with respect to the Corporation's obligations to remit pension plan contributions to the Fund.  Compl. ¶ 39.  The admissions further establish that he dominated and controlled the affairs of the Corporation, withheld the pension plan contributions, and purposefully diverted them to his own benefit. *Id*. ¶¶ 40–48.

The admitted facts also establish a valid claim under the LMRA, which "provides a federal cause of action for suits for violation of contracts between an employer and a labor organization." *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (cleaned up).  "Under Section 301 of the LMRA, an employer may be held liable for failing to remit dues or contributions to a labor organization as required under the terms of a CBA." *Upstate N.Y. Eng'rs Health Fund ex rel. Spaulding v. Pumpcrete Corp.*, 2022 WL 595701, at *3 (N.D.N.Y. Feb. 28, 2022) (Sannes, J.) (cleaned up).

The remaining question is whether damages can be ascertained without a hearing.  "[A] defendant's default does not constitute admission of the plaintiff's allegations relating to the amount of damages." *Int'l Assoc. of Sheet Metal, Air, Rail & Transp. Workers, Local Union No. 71 v. Lovejoy Metals, Inc.*, 495 F. Supp. 3d 174, 184 (W.D.N.Y. 2020) (cleaned up).

"Rule 55(b)(2) provides that when granting a default judgment, if it is necessary to take account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper." *Credit Lyonnaise Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999) (cleaned up).

However, "[t]he Second Circuit has held that as long as the district court 'ensured there was a basis for the damages specific in the default judgment,'

such as by relying on detailed affidavits and documentary evidence, it is not necessary for the court to hold a hearing." *Finkel v. Firequench, Inc.*, 2020 WL 1323017, at \*1 (E.D.N.Y. Mar. 20, 2020) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

Upon review, there is no need for a hearing because plaintiff's submissions provide an ample basis for the calculation of damages. *See* Buffum Aff., Dkt. No. 17-2 & supporting exhibits. Among other things, plaintiff's submissions establish that the Corporation owes the Fund: (1) $21,451.41 in fringe benefit contributions and deductions for work in covered employment during the period of January 1, 2020 through December 31, 2021; (2) $19,897.44 in interest related to the delinquency as of October 31, 2022; and (3) $21,477.69 in liquidated damages.[3]  Buffum Aff. ¶¶ 11–14; Kornfeld Aff. ¶ 9. These submissions further establish that Lahasky owes the fund $21,451.41 in fringe benefit contributions plus $2,165.40 in interest.  Buffum Aff. ¶¶ 15–17.

As a final matter, attorney's fees and costs are appropriately awarded under ERISA and the LMRA. *See* Pls.' Mem. at 9–11; *see also Bricklayers*

---

[3] The Fund Manager offers a lower figure for liquidated damages: $4,290.28.  Buffum Aff. ¶ 14. Indeed, the Fund Manager explains in her affidavit that liquidated damages were calculated as 20% of the delinquent contributions ($21,451.41 x 20% = $4,290.28).  However, a careful review of the papers establishes that the $21,477.69 figure found in plaintiff's moving papers actually accounts for the $4,290.28 in liquidated damages arising from the delinquency between January 1, 2020 through December 31, 2021 as well as $17,187.41 in liquidated damages that remain unpaid from a prior period between April 1, 2020 and September 30, 2021.  Kornfeld Aff. ¶ 8.  The Court should not have to go hunting through the papers for this kind of explanation.

*Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*, 2021 WL 3861762, at \*2 (E.D.N.Y. Aug. 30, 2021) (collecting cases on ERISA and the LMRA).

"In calculating attorney's fees, the district court must first determine the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee." *Stanczyk v. City of N.Y.*, 752 F.3d 273, 284 (2d Cir. 2014) (cleaned up).

Under the lodestar approach, the "reasonable hourly rate" is determined by reference to "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany* ("*Arbor Hill*"), 522 F.3d 182, 184 (2d Cir. 2008). As the Second Circuit has explained, "the reasonable, paying client" is one "who wishes to pay the least amount necessary to litigate the case effectively." *Id.*

To make that determination, courts must consider a number of factors, including but not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation,

> etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184.

Plaintiffs seek $31,605.00 in attorney's fees and $1,336.41 in costs and disbursements. Kornfeld Aff., Dkt. No. 17-7 ¶ 15; *see also* Ex. A to Kornfeld Aff., Dkt. No. 17-8. To reach the first number, plaintiff has requested a rate of $335 per hour for Daniel Kornfeld, an experienced ERISA attorney with twenty-five years of experience. Pl.'s Mem. at 10; Kornfeld Aff. ¶ 14.

In determining a reasonable hourly rate, "[t]he Second Circuit has instructed district courts to consider 'all case-specific variables' including [the] factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 251 (E.D.N.Y. 2020). These twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Torcivia*, 437 F. Supp. 3d at 251 n.3 (citations omitted).  Importantly, however, the trial court "need not robotically recite and make separate findings as to all twelve of the Johnson factors."  *Id*. at 251 (cleaned up).

Upon review, the requested hourly rate is reasonable.  Under the "forum rule," the reviewing court generally applies the prevailing hourly rate in the district in which it sits to calculate a presumptively reasonable fee.  *See, e.g.*, *Pumpcrete Corp.*, 2022 WL 595701, at \*8 (finding rates of $323 and $328 for counsel to be reasonable and collecting cases).

Plaintiff's motion further seeks an award for 96.70 hours of work.  *See* Kornfeld Aff. ¶ 15 & Ex. A.  That number must be reduced by 2.9 hours to account for time entries by an individual who goes unidentified and whose role is left unexplained: "JAC."  Beyond that reduction, however, the remaining 93.8 hours billed by "DEK"—Daniel E. Kornfeld—are supported by appropriate time entries and are reasonable.  *See Finkel*, 970 F. Supp. 2d 108, 129 (E.D.N.Y. 2013) (explaining that court reviewing fee application "should exclude excessive, redundant or otherwise unnecessary hours").

Finally, plaintiff's motion seeks $1,336.41 in costs.  This bottom-line number consists of fees for copying ($424.40), filing ($402), postage ($51.40), courier service ($36.27 + $38.84), service of process ($133.50), and stenographic recording ($250.00).  Based on a review of the record and the

submissions, these costs are reasonable. *See Finkel*, 970 F. Supp. 2d at

130 (recommending a similar award of costs in ERISA action).

## V.   <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1.  Plaintiff's motion for a default judgment is GRANTED;

2.  Plaintiff is awarded $21,451.41 in unpaid contributions plus $19,897.44

in interest and $21,477.69 in liquidated damages against defendant The

Pearl Nursing Center of Rochester, LLC, together with post-judgment

interest at the rate provided for by 28 U.S.C. § 1961(a);

3.  Plaintiff is awarded $31,423.00 in attorney's fees and $1,336.41 in costs

against defendant The Pearl Nursing Center of Rochester, LLC, together

with post-judgment interest at the rate provided for by 28 U.S.C. § 1961(a);

and

4.  Plaintiff is awarded $21,451.41 in unpaid contributions plus $2,165.40

in interest against defendant Mordy Lahasky, together with post-judgment

interest at the rate provided for by 28 U.S.C. § 1961(a).[4]

---

[4]  While a fiduciary is obligated to "make good to [the] plan any losses to the plan resulting from [his] breach, and . . . [provide] such other equitable or remedial relief as the court may deem appropriate," 29 U.S.C. § 1109(a), the Second Circuit has held that liquidated damages do not qualify on any of those grounds, *Moulton Masonry & Constr., LLC*, 779 F.3d at 189.  Likewise, the Circuit has cautioned that an award of attorney's fees against an individual defendant is inappropriate absent a "specific analysis" as to why they are justified.  *Id.*  Because plaintiffs have not offered one, the award against Lahasky is limited to (1) unpaid contributions and (2) appropriate interest.

The Clerk of the Court is directed to enter judgment accordingly,

terminate the pending motion, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  October 28, 2022
        Utica, New York.